Our final case of the morning is case number 118955 Christopher B. Burke Engineering Ltd. v. Heritage Bank of Central Illinois. Are you ready to proceed? Ready? Good afternoon. Good afternoon. Madam Chief Justice, Counsel, may it please the Court. My name is Scott Braden, and along with my co-counsel Scott Smith and Jeffrey Crumpy, we represent Christopher B. Burke Engineering, Inc. in this matter. Your Honors, the purpose of the Illinois Mechanics-Lean Act is to provide protection to those who provide labor, materials, or services for the purpose of improving or for the physical improvement of a property. The decision of the appellate court majority in this case effectively eviscerates the protection that tens of thousands of design professionals throughout this state have sought under the Mechanics-Lean Act for well over 100 years. Both lower court decisions in this case ignored this court's precedent established in Freeman v. Rineker and Crowen v. Myers, a precedent that has existed in this state for over 100 years. Your Honors, architects, engineers, and land surveyors need the Mechanics-Lean Act protection today, not more today, than they did a century ago. There is no reason that established Illinois law should be changed under the facts of this case. Yet, that is why we are here today. We are here today because the appellate court majority decision changed Illinois law. The facts of this case are very straightforward, and they play themselves out in real estate transactions throughout this state on a daily basis. In April 2008, Burke contracted with Carroll and Glenn Harkins to provide engineering services in furtherance of the Harkins' desire to develop a tract of land into a residential subdivision. However, at the time that that contract was entered into, that property was not owned by the Harkins. It was owned by Carroll Schenck. So in August of 2008, the Harkins purchased the property from Schenck, and then after that, they obtained a mortgage from the Appali Heritage Bank. And then as things happened in 2008, development went under, and the Harkins filed for bankruptcy protection, and then Burke went unpaid. As a result, Burke recorded its mechanics lien, and ultimately filed suit to foreclose on that mechanics lien. On motion for summary judgment filed by the bank, the trial court held that Burke's lien was invalid.  The services that Burke had provided did not provide an improvement or a benefit to the land, and secondly, that Schenck had not obtained any type of benefit from the services that Burke had provided. In a two-to-one decision, the appellate court affirmed the trial court's invalidation of the lien. In so ruling, the majority erroneously held that in order for an engineer such as Burke to maintain a mechanics lien on a piece of real estate, the engineer must establish that its services resulted in either an improvement on the property or an enhancement in the value of the property. According to the majority, the services that Burke had performed did not result in an improvement or enhancement of the value of the property, and therefore by definition under the Mechanics Lien Act were non-lienable. We are here today to ask this court to reverse the appellate court, to reaffirm its holdings in Freeman and in Crowan, and to reestablish the protections that architects, engineers, and land surveyors have had under the Mechanics Lien Act for over 100 years. We are further asking this court to take an opportunity, this opportunity, to establish clear guidelines for trial courts to use when they are confronted with design professionals and what services those design professionals provide and determine what those services are to be deemed lienable. Lastly, we are here to ask this court to establish clear guidelines for the lower courts to use when these types of services are provided to one whom the owner of the real estate knowingly permits to contract for those services. Now under Illinois law, there are two requirements in order to maintain a mechanics lien. First, the claimant, the lien claimant, must have provided one of the listed services under Section 1 of the Mechanics Lien Act. This is the issue of lienability or whether or not the services are lienable. The second is that the services must be performed for either directly for the owner, under contract with one whom the owner has authorized to contract for the owner, or for one whom the owner knowingly permits to contract. And this requirement, the satisfaction of this requirement, allows the lien to attach to the owner's interest in the real estate. Now with regard to the issue of lienability, the first issue I mentioned, there are two issues raised in the appellate briefs. The first issue is actually raised by the appellate, and it deals with the statutory interpretation of Section 1 of the Mechanics Lien Act. So to be clear, it's Burke's position that the Mechanics Lien Act in Section 1 is clear and that when design professionals such as Burke provide services under Section 1 of the Mechanics Lien Act, when they provide services or design services for the purpose of improving property, those services by definition are lienable. Now the bank asks this group to interpret Section 1 of the Mechanics Lien Act in a way that would severely limit the lien rights of architects and engineers and for all intents and purposes eliminate the lien rights for land surveyors and property managers. Are you arguing that architects' work is the same as engineers? Are they different? Well, yes. I'm arguing that they're both done for the purpose of improving real property, yes. So in that vein, they're the same. And they're deemed an improvement to the land? They have been in the past? I think that they have been done for the purpose of improving. There's a difference. That's what I was asking. Right. The difference is that a building, sticks and bricks, is an improvement to the land. By building a building on the land, that is an improvement. But the legislature has said, well, those who provide services with respect to the improvement of the land are also entitled to a lien. But they don't, the services of an architect or an engineer or a land surveyor are not in and of themselves physical improvements. They're done for the purpose of improving, which is the express language in the statute, for the purpose of improving or for the improvement of real property. Does that answer your question? Yes. So with respect to the statutory argument, the issue really turns on this comma versus semicolon issue. And if this court were to go back and look at the statute as it existed in 1895, all the lists of items or services that are deemed lienable were separated by commas. And then in 1913, somebody decided to change all those commas to semicolons. And then in 1937, when the legislature added well drillers to the list of claimants that could be entitled to a lien, they changed one of the semicolons to a comma. And that semicolon existed between the phrase, to raise or lower any house thereon, or remove any house thereto, and the phrase, or perform services as an architect or as a structural engineer for any such purpose. Now, the bank makes much out of this comma. And according to the bank's argument, they insist that what this means, when you read the statute, that architects, engineers, land surveyors, and property managers are only entitled to a lien if they raise or lower or remove a house from a piece of property. As we explain in detail in our reply brief, neither the purpose and intent of the act nor logic supports this argument. The only fair reading of Section 1, a reading which this court adopted more than 100 years ago in Freeman and reestablished in Crowan, is that surveyors and architects and engineers are entitled to a lien if their services are done for the purpose of improving property. The second issue presented, which both the appellate court and the majority, excuse me, the appellate court majority and the trial court focused on, was whether or not the services I'm sorry, Counselor. And is your position on that interpretation based at least in part that otherwise it wouldn't make sense to give a lien to property managers? It wouldn't make sense to give a lien to property managers nor land surveyors because a land surveyor would not be involved in the raising or lowering or removing of a house. But particularly, that point you raised with regard to land surveyors is particularly evident. Because they clearly wouldn't be involved in that. And if you look at the statute, there's nothing in the legislative history that we could find, and granted, it's scarce, but that would make sense to have limited the rights of architects, engineers, land surveyors, and property managers in that way. In fact, if you think about it, in 1951 when they added land surveyors, they would have looked at it and thought to themselves, well, but it's only for the purpose of raising or lowering a house. Their intent was, clearly had to be, that it was for the purpose of improving property when they were doing that work. Because you have to look again, and we cited in our review, you have to look at the statute related just to land surveyors and what land surveying is, and you would see that those services have nothing to do with raising, lowering, or removing a house. So it's just basic common sense is that that comma was an inadvertent change, that, in fact, it should have remained a semicolon. We wouldn't be having this discussion. So again, that was an argument that was raised by Appellee and their briefs. And what the trial court focused on and what the appellate court focused on was this issue of whether or not BERT services improved or benefited the property. Now, the majority held, as I stated, that BERT services were not amenable because BERT's engineering did not enhance the value of the property. There was no improvement to the property. And we submit that this is not the law of this state. Under Section 1 of the Mechanics Lien Act, we believe there are really two tests that a court is to apply. They're to select one of two tests. The first test, we believe, is embodied in this court's decision in Culp versus First Baptist Church. And we believe the other test is embodied in this court's decision in Crowan. Now, the Culp test is applied when a contractor who constructs a building goes unpaid. And that test looks at whether or not there was a benefit to the property or whether the value of the property was increased as a result of the services. That's Culp. The other test, the Crowan test, is applied when a design professional provides services and goes unpaid. And that test does not consider whether or not there was a benefit to the owner or whether the property was improved or the value increased. Rather, this approach simply asks, were the services that were performed by the design professional, was it one of the listed design professionals covered by the Act, and two, was it done for the purpose of improving the property? Under this test, architects, engineers, land surveyors, and property managers, for that matter, do not need to plead and prove that their services enhanced the value of the property or resulted in the construction of a tangible improvement. Now, the trial court and the appellate court both applied what we call the Culp test. And that's just a shorthand way for us to refer to these two tests. We believe that they applied the Culp test, and we believe that that was incorrect. We believe that the trial court should have applied the Crowan test. However, this error we would submit is understandable. If this court were to look at the history of the mechanics lien laws in this state or the mechanics lien opinions in this state, and again, there aren't many. A lot of us use very old case law because there's not a lot of law just on the mechanics lien Act. But you'll see most of the decisions are really based on contract, sticks and bricks. We've got the labor who went unpaid, the mason who went unpaid. That's why the Culp test becomes so prevalent in the case law. There are very few cases, if you look at it, that are really on the Crowan test. And that's because very few times are architects or engineers or land surveyors left in a position where they're not paid and they lien. But to be clear, the lienability issue is not controlled by the appellate court's decisions in Mostardi and Platt, Watson v. Watson, or L.J. Keith and Company v. Chicago and Northwestern Transportation as the appellate court majority found. Rather, it is controlled by this court's decision in Crowan, as the dissent correctly observed. It's clear, as I stated to Justice Burke, that architects' drawings and specifications, architects, engineers, land surveyors, their drawings and specifications, do not result in a physical improvement of a strike benefit. They are not a physical thing themselves. They result in an improvement in property. And it's clear that they are prepared for a possible improvement, or in the words of Section 1 of the Mechanics' Lien Act, for the purpose of improving the property. And as the court in First Bank of Roscoe v. Rinaldi recognized, under the act, architects, structural engineers, professional engineers, land surveyors, and property managers who perform any service or incur any expense for any purpose are entitled to a lien. In this case, the services that Burke performed are clearly lienable under the act. As the record demonstrates, they prepared a plat of subdivision which was ultimately recorded. One house was constructed on a lot, and the services that Burke provided facilitated the construction of that house on that lot. And furthermore, the engineering services that Burke did perform would allow for the construction of roads and sewers on the property. So there is no question. Considering that the lien would attach at the time the contract was entered into, would further proceedings be required to determine how much of the lien can be enforced from each of these participating contractors or engineering? Your question, Justice Freeman, was addressed by the dissent and the way the dissent said it had to be returned to determine valuation. And our position would be no. Our position would be that because the lien attaches at the time of the contract, the services are fully lienable that were performed. Now, again, remember, the one thing that sort of gets messed up in this is that the services commenced in April of 2008 but continued far beyond August of 2008 when Harkins became the owner of the property, all under one contract. So there would be really no basis to say, well, we're going to look at what was pre-purchase and we're not going to allow that to be included in the lien and we're going to consider everything post-purchase. Essentially what that would be doing is advocating for almost an application of the after-acquired title doctrine to this situation. And neither of us have discussed the after-acquired title doctrine and the effect of the after-acquired title doctrine here. But really in terms of attachment, the attachment question, it would be in April of 2008 and all the value of all services would be lienable. Does that answer your question? Just to follow up on Justice Freeman, in terms of the dissent that you've referred to, you don't obviously agree with the dissent in its entirety. That's correct. We don't agree that it would be returned just to determine the valuation of services after August 2008. But to focus in on this, I may not understand this directly, but I thought Justice Litton made a distinction in his dissent based on who actually owned the property. No, in fact, what Justice Litton had done was get a very detailed examination of why architects and engineers and land surveyors are entitled to liens. I got that part of it. But then there is a statement at the very beginning of the dissent that talks about the concept that Justice Freeman mentioned, and at the very end of the dissent where he recommends that it be returned to the trial court for a determination of valuation. Our belief is consistent with the way that a mechanic's lien is treated. It is from the time of attachment until the services are completed as to how you would determine the value of the services. If you were to extend the logic to what is a common situation that you would find yourself in where an architect would be hired to build a building, and they're hired before the property is sold. And they do all of their work on the front end before the property is purchased by their client. And then their client purchased the property, and all they do afterwards is complete the construction administration phase. And they go unpaid. Under that concept, they would only be entitled to a lien for that small amount of money. We believe that they'd be entitled to a lien for the entire value of the property, for the entire value of the services. And that would be the case even like in this instance. As I understand it, Mrs. Schenck or Ms. Schenck didn't make the contract and really wasn't aware of it. Is that right? Well, she was aware of it. She wasn't aware, and that goes to the issue of attachment. That's the knowingly permitted exception, and that's one of the things that we were focused on is that, you know, counsel for the bank asserts that with regard to the knowingly permitted requirement, that there's some very strict requirements that are set forth in the law, that you must know at the time of contracting that the contract is being made, that Schenck must have known at the time of the contract being made what the services they were going to be providing, that Schenck didn't object, and that Schenck accepted the benefits of the services. We would submit that that is not the law. And, in fact, what we would suggest the court look at is actually those cases that deal with landlord-tenant law because the mechanics lien cases in there are all under the knowingly permitted exception, and it's our position that the law in Illinois on that point only requires two things, a general knowledge of the contract and a failure to object. And I would recommend that the court look at the case of Construct Illinois v. Kaiserman, which is a more recent decision, but in that case the defendant, the defendant, the landowner in that case, made a very similar argument to the argument that the bank made, which is that how would we know? How would we know that they're, what do we do if we don't know right away? Well, the court in Construct said the minute that you know, you object. And if you object the minute that you know, then you are not knowingly permitting the work to be done. But the record shows that Ms. Schenck knew that the services were being performed by Burke for the sale of the property. Ms. Schenck knew that he was generally providing subdivision, subdivision designs and other designs for the purpose of subdividing the property. She testified to that. So from the cases like Janus v. Reynolds and Young v. Bergner and Constructs of Illinois v. Kaiserman, those cases all show that you only need to show those two elements. You don't need to show a benefit. The benefit is actually an or. They say that under the Betts, Love, and Stephen that the benefits issue is you have to show that they knew, they failed to object, and they accepted benefits. That's not the law either. The law, that's an or test. You look at Miller, oh, I see my time is up. To close, obviously we have all our arguments in our briefs. We would stand on our arguments in our briefs, and we believe that the appellate court should be reversed and Burke's lien should be determined to be valid and enforceable. Thank you. Thank you. May it please the Court. My name is Mike Kraft. I represent Heritage Bank of Central Illinois. They are a third-party mortgage lien holder, which is important in this case. Also what's important in this case is that it is not a situation where there's a contract directly with the owner. It is a contract with a third party, and it's under the knowingly permitted section, so to speak, of Section 1 of the McKinsey-Lien Act. And I would state that that area of the McKinsey-Lien Act was not covered much, if at all, in the appellant's arguments, and that's one of the reasons why we believe that their arguments and their positions are in error. There's three principal reasons, Your Honors, three legal reasons why we believe that the appellee's arguments fail and the appellate court's decision should be affirmed. First, the issue of the definition of improvement in Section 1 of the McKinsey-Lien Act. The appellant fails to properly construe that section. Two, with a knowingly permitted McKinsey-Lien situation, there is a requirement under Illinois law for an improvement to enhance the value of the property and for the actual owner to accept or to receive a benefit from that improvement in order for the knowingly permitted exception or language to be in play. And third is the knowledge that Ms. Shank had in this case. Virtually none, in fact, in a little bit. But those are three separate and distinct reasons. Each of them alone would cause the court to affirm the appellate court's decision. And there's really two analytical deficiencies, I believe, in the appellant's arguments and their positions. One is that they fail to recognize the overwhelming amount of case law that states that in construing the McKinsey-Lien Act, it has to be strictly construed, especially in this case where we have Heritage Bank, which is a third-party mortgage lien holder, and there's case law that admittedly is not binding upon this court, but very good policy in that situation with third-party encumbrances or third-party purchasers, that the construction of the Act should be even stricter in those situations, and that's the case here. And then the second deficiency that I alluded to earlier is that counsel for appellant does not distinguish between cases that deal with a contract directly with the owner and contracts that deal with third-party contracts, contracts not directly with the owner. And those cause their arguments to get off the rail. First, the definition of improved. The appellant's counsel did a brief review of Section 1. In this case, we have the Crowan case, the Freeman case, which are cases from this court that construed the 1895 version and the 1929 version of the McKinsey Act. While they're somewhat similar to the current version, there are some differences as far as the commas and the semicolons and such. If you look at the current version of Section 1, it's clear that there are semicolons between each of what I have labeled as six subsets or six clauses within Section 1B of the McKinsey Act. And I separated those just so it's a little bit easier to review those. And a plain review of the third subsection states that that language, regarding architects and engineers and professional engineers, states that for any such purpose, that has to refer back to the language within that subset with those semicolons. Now, even if it's argued that it can refer back to prior language even outside that subset within those semicolons, it has to go back to the subset 2 or the subset 1, which is immediately before it in subsection B of Section 1 of the McKinsey Act. What appellants are trying to do is a circular argument. They're trying to essentially pull themselves up by their own suspenders and belt. They state that the language in the third subset for any such purpose refers back to the language in a different subsection, which is subsection 1A, which is the purpose of improving. And they make that leap and state that you go from the third subset in subsection 1B up to subsection 1A to that language. And, first of all, that's not how you would construe the statute. And even if you did, it's a circular argument because the language in Section 1A regarding improving or for the purpose of improving necessarily refers to subsection B. So even if— I know where you're going there, but how do you reconcile land surveyors and property managers? Well, Your Honor— With your analysis here. Well, first of all, property managers manage buildings and structures. And so if the court did construe this language back through the first— They don't raise or lower any house thereon or remove any house thereto. Right. The two subsets, I guess, before that, in the semicolons, there's language regarding excavation and landscaping, and then the first one is essentially buildings and houses. So if the court would construe for any such purpose language to go back through subsection B, then that would cover services by the land surveyors and property managers with respect to buildings and structures. Property managers provide services for buildings and structures, which is referenced in the first part of Section 1B. And the same for land surveyors,  which are referenced in that first subset of Section 1B. So if the court believes that the semicolon comma issue is not as positive as looking at just that third subset, at most you would go back through that same subsection for any such purpose, just as this court stated in the Freeman case when it interpreted the 1895 version. It did go back. Those were just commas instead of semicolons. It did go back and reference the language regarding buildings and houses in that case, and it specifically stated that architects' services for the purpose of building or constructing buildings and houses was enough to support a lien under the McKinsey Act at that time. So, Your Honor, did I respond to your question? I believe that if the court would construe that for any such purpose, back through just subsection 1B itself, that it reconciles and it gives effect to the property manager and the land surveyor and all the other professions that are listed in that third subsection, so to speak. With regard to, again, it's a circular argument in that they're stating that for any such purpose, instead of going back through just subsection 1B, actually jumps and goes up to subsection 1A to language that they need for their purposes, and that is the purpose of improving. But again, that begs the question. The question is, which appellant's counsel has not answered in briefing or in argument, what's the purpose of improving? What does that mean? It has to mean you have to go back into subsection 1B. That's the definition of improvement and improving under the McKinsey Act. So the issue is whether or not the underlying services that were provided by the appellant in this case fall within any of those expressly stated material services or activities in subsection 1B. And there's no cases that have been cited by appellants, and there's no cases that have been found by any of the courts to this day, that would support a finding that the activity of preparing and recording a final plat falls within the express language of the McKinsey Act in section 1, which, again, case law states has to be construed strictly. In fact, I think the last substantive sentence in the Freeman case stated that, the lien claimant has to strictly fall within the terms of the act and that the court is not to infer anything to the claimant's situation. Is there a difference when subsection B specifically defines improve as used in subsection A but doesn't define for the purpose of improving? Your Honor, I think that you have to insert for the purpose of and then the improvement, whatever the purposes are, and that's why there was no overturning of the Crowan case and there is no overturning of the Freeman case, and that is those cases involved a situation where an architect had designs for a building and a house, constructing a building and a house. So it was for the purpose of a stated improvement under section 1B. It wasn't at that time, but it was for the, in this case, in our situation, it's for the purpose of constructing a building or a house. So it itself doesn't lead to the hammers and nails to the building or the house, but it is for that purpose. In this case, the work… How could an engineer then doing a plant ever get a lien? Could they ever get a lien under your interpretation? Yes, Your Honor. I think that if they provided services for the construction of a building or a house or physical… Surveying would not be included. Engineering surveying services would not be included. I think that they could, Your Honor, if surveying was done for the purpose on a lot of building, a house or a building or an improvement or the excavation work or such. That language is before. And I guess, again, it's a situation where the act should be strictly construed, and I think that the appellant is asking this court to expand the definition of a lien right for an architect or professional engineer or such in this case. In fact, into kind of a super lien. There's no limitation as to when a lien would apply under the analysis of the appellant. And in this situation where it's a knowingly permitted situation, if under the appellant's position, the only thing that would have to happen is that you might have five or six suitors for the purchase of some commercial property, and they each come up to the seller and say, I'm not sure if I want to buy it or not, but I'm going to go talk to my engineer and find some things out. That in itself, under the appellant's position, would impose a lien upon that seller because one has knowledge of a contract, regardless of what the knowledge is or what the scope of the knowledge is, and under their analysis, there's no need for any sort of improvement or benefit to be received by the actual owner. And that's certainly not an equitable situation, so to speak, for the seller. And if that is what the court would adopt, that would have huge ramifications on the sellers of commercial property. And the duties that they would have to would be imposed upon them by just a small statement like that by a potential buyer. And not to mention title insurance for those types of situations. What would be covered, what wouldn't be covered. Whereas the policy is that the act is to be strictly construed, and so that the burden and the onus should be upon the lien claimant because they are asking for really an extraordinary remedy. I mean, they have a remedy with the party that they contract with to be paid. This is an extraordinary remedy to impose a lien upon the real estate. And a situation where the contract is directly with the owner is different than a contract that's with a third party. In a situation where it's just a contract with the owner, like in the Freeman case, it is a situation where there isn't these additional requirements or they're knowingly permitted. But if the court would allow the court needs to determine what would be best as far as public policy in the situation of the burden or the onus to avoid a situation like this. And if you're purchasing property, you should be able to pretty easily find out who the owner is. And if it's not, if the person you're contracting with is not the owner of the property, then the onus should be upon the potential lien claimant to determine what the situation is, what kind of knowledge the owner has and such. And it's clear that, as stated in our brief, that in this case, Ms. Schenck received no benefit, had virtually no knowledge of the contract between Burke Engineering and Mr. Harkins, was only casually aware that that was happening, but as a situation where she was looking to sell the property, Mr. Harkins admits that there was no benefit to Ms. Schenck, there was no intended benefit to Ms. Schenck, and he admits that he doesn't recall if he ever even told her about Burke Engineering in any of the work that was being done. So it's a situation where, not like situations in the cases that have been provided by the appellant, that there's an owner that has virtually no knowledge in this case. The only knowledge that Ms. Schenck had was potentially of a contract, no knowledge of any sort of work that was going to be done. As far as the issues, the second issue on the benefits and improvements for a normally permitted situation, we've cited three cases which we understand are not binding upon this court. However, the reasoning and the policy behind them we believe strongly in, and that is the situation with normally permitted is that the owner has to have knowledge and the owner then needs to fail to object. Well, the issue of the improvement and the benefit comes into play with regard to whether or not the owner needs to object. So essentially, whereas there are some cases where it's not explicitly stated that an improvement needs to be made or a benefit needs to be received by the owner, that's the trigger event for the duty to object. In order for the owner to be required to object, there has to be some improvement that they see or they have to receive a benefit. And in that case, it would be inequitable for the owner to sit back, not object, receive this benefit, receive this improvement, and not have a lien against it. But in the cases this, where the work has absolutely no benefit, I mean, everybody agrees, the trial court judge, all three appellate court justices agree, that there was no benefit for any of the services to Ms. Schenck in this case. And then the LG Keefe case is a case which deals just with the benefits received by the property owner. It was a case where the railroad licensed property to the licensee, and they put in some electrical cables and such, which was an actual physical improvement to the property. But the appellate court decided that it was exactly no benefit to the landowner. And because of that, there was no trigger event which would require them to object to it, even though they had knowledge of it and presumably accepted it because it was part of their property. And lastly, Your Honors, just to hit on the public policy issue again, a situation where multiple potential buyers come and talk to a seller and just make a statement as to the fact that they may, I see that my time is up, Your Honor. For these reasons, we believe that the appellate court's decision should be made. Thank you. Joseph? Again, good afternoon, Your Honors. There were a lot of things that my esteemed opponent brought up, and a lot of this is also addressed in our briefs, and I don't think that it's necessary to delve into it in tremendous detail, but there are some things that I want to address. The first is with respect to the strict construction issue. Strict construction out of the Mechanics' Lien Act is a matter of when you get into it. Once you're in the Mechanics' Lien Act, it's to be liberally construed. But strict construction really relates to the perfection of the lien, the timing, whether it was if you're a subcontractor, 90 days, whether if you're as to third parties recorded within four months after last date of work. That's strict construction. I don't think that an interpretation of Section 1 turns on a question of strict construction. In fact, I would submit that it turns on a question of liberal construction. Once you're within the act, it's to be liberally construed. Then with respect to this issue on the purpose of improving, the amicus goes into great detail about what a plat of survey is, or a plat of subdivision is. You cannot build a subdivision without a plat of subdivision. I don't think that council would argue that if they built houses on this residential development, that Burke services weren't for the purpose of that improvement. Clearly, you need a plat of subdivision in order to build the subdivision. So I think that the notion that a plat of subdivision is not for the purpose of improving is without merit. The fact of the matter is what the trial court said is it did not improve the property. The trial court never looked at the question of whether it was for the purpose of improving. With respect to this dichotomy between Section 1A and Section 1B, Section 1A says a contractor enters into a contract with one knowingly permitted to contract for the purpose of or in the improvement of real property shall be deemed a contract. That's what Section 1 says, paraphrasing. Section 1B defines what it means to improve. Section 1B uses the terms for the purpose of improving, and it not only speaks to buildings, it not only speaks to houses, it speaks to improvements and appurtenances. So if you read the entire text, it says that you fall within the act if you provide services for the purpose of improving an improvement or an appurtenance. So that would follow into roads and sewers and with respect to land surveyors, their plat of survey, because those are related to the purpose of an improvement or an appurtenance. So again, I think that the act itself covers this. I don't think that there should be much of a debate, and in fact it's surprising that we get into this discussion. I don't think that anybody who practices in this area would ever think that a survey or a plat of subdivision is not a leenable activity under the act. It's performed by a land surveyor, it's for the purpose of improving, and therefore it's an improvement. With respect to this benefits argument, this is this issue that I tried to segregate between this Colt test concept and this Crowan test concept. And again, what you have to look at, and I would urge the court to really read Crowan carefully, because I would submit that Crowan is actually on all fours with this case. In Crowan, Sopkin was the original owner of the property, two parcels of property. Myers was going to buy that property. Myers hires Crowan to prepare plans for a laundry mat. They decide not to go forward with the property after Crowan's already done his work, and then Sopkin later sells the property to Myers. Same situation we have here. Exactly the same situation we have here. And you see this court says nothing about the benefit to Sopkin. They say nothing about an improvement having to be made to those two parcels of property. They say that Crowan is entitled to a lien for the services with respect to the performance of services on that property. And again, I guess that goes to Justice Kilbride and Justice Freeman's point with respect to the valuation issue, because at that point, all the services in Crowan were already performed, but the court allowed a lien for the entire value of the services that were performed prior to the time that Myers owned the property. The property, again, was owned by Sopkin. Now, there's this issue on this public policy, and the counsel says that what will you do if you own a piece of property and you have six suitors, and they're all interested in the property? Well, I would submit that the court should look at, again, the landlord-tenant cases. And I cited in my initial argument, and it's in our briefs, constructs of Illinois versus Kaiser. And therein is the answer. Someone in that situation simply has to say, I am not authorizing anybody to perform services with respect to this property. At that point, you have cut off any lien rights. It's the same in the landlord-tenant context in the mechanics lien law area. If you look at the way the courts come out, they look at the leases. If the leases in those cases specifically say the landlord does not consent to the tenant making any improvements to the property, the landlord does not knowingly permit the property to be improved. And if an improvement occurs and the landlord didn't know it was happening and didn't walk by the building, then there's no lien. The knowingly permitted exception or knowingly permitted requirement is not met. So I would submit that in that situation it's far easier for the seller of a parcel of property to advise the purchaser, the potential purchasers, that they will not allow any services to be performed with respect to the property than the reverse, which is to require each design professional to independently investigate and then notify the property owner that they're going to be providing services in the scope of services that they're going to be providing. And then with respect to this benefits issue, again, there is no requirement for benefits to be provided by an architect or engineer or land surveyor. All that is required under the Act is that they provide services for the purpose of improving. There's no case, a design professional case, in which the court finds the benefit requirement needs to be met. So in conclusion, Your Honors, if the appellate court majority opinion in this matter is allowed to stand, it will most certainly be used by banks, homeowners, title companies to bar the lien rights of architects, engineers, land surveyors when the projects they are working on do not go forward. Affirming the appellate court majority would mean that in all instances, an architect or an engineer or a land surveyor would need to demonstrate that their services improved the property on which they worked at. And that if the property is abandoned, the project is abandoned, or construction starts, under the majority opinion in the appellate court, no lien would be attached. This is not only a direct contravention of this Court's holdings in Crowan and in Freeman, but also the longstanding purpose of the Mechanics' Lien Act, which is to protect those who in good faith provide services for the purpose of improving property. We therefore request again that the appellate court be reversed, and that Burke's lien be deemed valid and enforceable, and that this matter be returned to the trial court for further proceedings. Thank you. Thank you. Case number 118955, Christopher B. Burke Engineering Ltd. v. Heritage Bank of Central Illinois, will be taken under advisement as agenda number 21. Mr. Fraden and Mr. Kraft, thank you for your arguments this afternoon, and you are excused at this time. Marshal, the Supreme Court stands adjourned until 9 a.m. tomorrow morning.